IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| ANDRE CRAWFORD-BRUNT, | ) |
|                 Plaintiff, | ) Civil Action No. |
|                 v. | ) **JURY TRIAL DEMANDED** |
| PETER KRUSKALL, | ) |
|                 Defendant. | ) |

**COMPLAINT**

Plaintiff Andre Crawford-Brunt ("Plaintiff"), as and for his Complaint against defendant Peter Kruskall ("Kruskall"), alleges as follows:

**NATURE OF ACTION**

1. Plaintiff brings this action against Kruskall seeking to hold him liable to Plaintiff for common law fraud in connection with Plaintiff's purchase of shares in Kensho Technologies Inc. ("Kensho") pursuant to a Common Stock Purchase Agreement, dated September 18, 2014 (the "Agreement"). In addition, Plaintiff asks that the Court reform the Contract based on Plaintiff's unilateral mistake regarding the agreed price per share and number of shares to be acquired in Kensho, and direct that Kruskall transfer to Plaintiff no less than an additional 86,739 shares of Kensho common stock.

**PARTIES, JURISDICTION AND VENUE**

2. Plaintiff Andre Crawford-Brunt is a citizen of the United Kingdom with an address located at 20 Wycombe Square, London, United Kingdom.

3. Upon information and belief, defendant Kruskall is a citizen of the State of Massachusetts who resides at 9 Riga Road 419, Dover, Massachusetts.

4. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). The parties in this matter are citizens of the state of Massachusetts and the United Kingdom, respectively, and the amount in controversy is greater than $75,000.

5. Upon information and belief, this Court has personal jurisdiction over Kruskall under G.L. c. 223A, Section 2, because he is domiciled in the state of Massachusetts.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1).

## FACTS

7. Upon information and belief, defendant Kruskall is the co-founder, with Daniel Nadler ("Nadler"), of Kensho, a data analytics and machine intelligence company organized under the laws of the State of Delaware. Upon information and belief, Kensho's products include Acumen, a research and analytics platform that offers quantitative analyses for financial professionals; the company also provides statistical computing and financial risk analysis applications.

8. Upon information and belief, Nadler is currently the CEO of Kensho.

9. Upon information and belief, at the time of the transaction in 2014, Kruskall was the Treasurer of Kensho.

10. Upon information and belief, Kruskall is no longer an officer, director or employee of Kensho, but he remains a shareholder in Kensho.

11. On July 14, 2014, Plaintiff contacted Nadler to express interest in making an investment in Kensho, which was then in the early stages of its business. In a telephone conversation that day, Nadler advised that he and Kruskall, on whose behalf Nadler said he was authorized to act throughout, would welcome an investment in Kensho. During this

conversation, Nadler and Plaintiff had an extensive discussion about Kensho's business and the investment opportunity Plaintiff wanted to pursue.

12.     Plaintiff expressed interest to Nadler in purchasing 2% of the outstanding shares of Kensho, calculated on a fully diluted basis, *i.e.* based on the total number of shares then outstanding if all possible sources of conversion were exercised.  During this same conversation, Nadler described a similar investment in Kensho made by an executive with LinkedIn and the terms of that investment, which Nadler said he and Kruskall could also offer to Plaintiff.

13.     Later that same day, after this conversation had concluded, Plaintiff emailed Nadler to say "many thanks for your time today.  I have not been this excited about an opportunity in a long time!  I would welcome being a shareholder or assisting in any way I can.  Please advise re the stake when you can.  I would be happy to buy up to a few million dollars."

14.     On July 17, 2014, Plaintiff received an email from Nadler stating, in relevant part: "Andre, please see attached the doc for the transaction with the LinkedIn executive.  He negotiated a 33% discount for the common stock relative to Goldman Sachs' 150M valuation for their investment in Kensho.  We will pin down the exact amount we can carve out for you over the next few days, but what you suggest, a couple of million, is likely in range."

15.     Plaintiff at all times understood that the "we" referred to in the last sentence of the July 17, 2014 email referred to Nadler and Kruskall, and that Nadler, acting for himself and as agent for Kruskall, with Kruskall's knowledge and consent, was negotiating the terms of Plaintiff's investment in Kensho on behalf of both of them.  Plaintiff at all times reasonably believed that Nadler had the authority to act on Kruskall's behalf in connection with negotiating the terms of Plaintiff's investment in Kensho and his purchase of Kensho shares from both of them.

16.     The July 17, 2014 email attached a draft common stock purchase agreement between the LinkedIn executive and the co-founders of Kensho – Kruskall and Nadler – clearly stating that the amount of the shares of common stock being offered to Plaintiff would be purchased based on a $100 million valuation of Kensho, *i.e.* at a 33% discount relative to a prior valuation by Goldman Sachs of $150 million.  Indeed, in paragraph 1.1 of this draft, which is attached hereto as Exhibit 1, the amount of the shares and the per share price were left blank and accompanied by a note stating **"[NTD: Amounts to be $_____ worth of shares for each Seller at a $100M valuation.]**."  Two percent of the outstanding shares of Kensho, calculated on a fully diluted basis, with the value of all outstanding shares at $100 million, would result in a $2 million investment by Plaintiff, as he and sellers had previously discussed.  Based on these representations, Plaintiff executed the draft agreement.

17.     After this transmission, there was no contact between the parties until September 11, 2014, when Nadler told Plaintiff that counsel for both Nadler and Kruskall would be in touch regarding a closing of the transaction.  The following day, counsel for Nadler and Kruskall forwarded a revised draft of the Agreement to Plaintiff containing changes from the first draft that were described as non-substantive, other than the inclusion of language joining Plaintiff to certain restricted stock agreements previously signed by Kruskall and Nadler with Kensho.  Both Nadler and Kruskall were copied on this communication.  At no time did Kruskall indicate to Plaintiff, in response to this communication or otherwise, that Nadler had negotiated the terms of the transaction without Kruskall's knowledge and authorization.

18.     In terms of filling in the important blanks from the prior draft Agreement, Kruskall and Nadler each obligated themselves to convey 220,000 Kensho shares apiece to Plaintiff, at a price per share equal to $4.54555, for a total investment by Plaintiff of $2 million.

Copies of the September 12, 2014 transmittal email from counsel to Kruskall and Nadler; the redlined draft of the Agreement accompanying that email; and a spreadsheet showing the share and price calculation that was also part of that transmission, are attached collectively as Exhibit 2.

19. The spreadsheet included within Exhibit 2 assigned a value to Kensho of $100 million and showed 22 million outstanding shares. Two percent of such shares calculated on a fully diluted basis amounts to 440,000 (220,000 per seller), and two percent of $100 million is $2 million ($1 million per seller). Dividing 440,000 shares by $2 million results in a share purchase price of $4.54555, and that is what the spreadsheet explains.

20. In reliance on this spreadsheet and the prior communications sent by or on behalf of the sellers of these shares, Plaintiff signed the Agreement on or about September 18, 2014, an execution copy of which is attached as Exhibit 3. At closing, Plaintiff paid Kruskall and Nadler each the sum of $1 million for the 220,000 shares in Kensho that each had agreed to sell. A copy of wire transfer instructions supplied by counsel for Kruskall and Nadler on September 17, 2014 so that Plaintiff could direct separate payments to them is attached hereto as Exhibit 4.

21. Several months later, Plaintiff learned that the sellers and the documentation provided to Plaintiff before the sale omitted a crucial material fact: the existence of outstanding convertible promissory notes that, when converted, would significantly diminish the value of the shares Plaintiff had purchased to a level significantly below 2%. Plaintiff had been told in writing that he would receive an equity valuation for his investment at a 33% discount to Goldman Sachs and agreed to the transaction on that basis. But, that's not what he received. The allocation of shares to him was made on an undiluted basis, and it's not possible for him to

have received the 33% discount relative to Goldman Sachs with an equity valuation calculated on an undiluted basis.

22.     Had Plaintiff been made aware before executing the Agreement of the existence of these notes and the fact that the valuation on which he based his investment was calculated on an undiluted basis, neither of which he could have discovered through other means, he would have bargained for a larger number of shares in Kensho necessary to accomplish the purchase of the 2% of the company, calculated on a fully diluted basis, that he had been promised.  The sellers' failure to disclose the existence of these notes, their impact on the value of Plaintiff's investment, and the calculation of the value of his investment on an undiluted basis, were material factors that induced Plaintiff to execute the Agreement on the terms described therein.

23.     Both Kruskall and Nadler knew that Plaintiff believed he was acquiring, in consideration for his investment, 2% of the outstanding shares of Kensho calculated on a fully diluted basis, but they did not disclose to Plaintiff that his understanding was incorrect or the other material facts recited above.

24.     Had Plaintiff actually received what he had been told and understood he was purchasing, the purchase price per share would have been $3.2601, and Plaintiff would have received no less than an additional 173,478 shares – 86,739 shares per seller for his collective investment of $2 million.  The value of these shares that Plaintiff should have received from Kruskall – but did not – was no less than $282,778 at the time of the purchase.

25.     After Plaintiff learned of the outstanding convertible promissory notes in early February 2015, Plaintiff asked both Nadler and Kruskall to transfer to Plaintiff the remaining shares promised to him but that he did not receive so that he would own 2% of the outstanding

6

Kensho shares calculated on a fully diluted basis. Nadler made the requested transfer to Plaintiff, but Kruskall did not.

## COUNT I: FRAUD

26. Plaintiff incorporates by reference all of the preceding Paragraphs as if fully stated herein.

27. Kruskall, through Nadler, knowingly and intentionally concealed from Plaintiff the existence of the aforementioned convertible promissory notes and the fact that the shares Plaintiff purchased in the Agreement did not represent 2% of the outstanding shares in Kensho calculated on a fully diluted basis, based on a $100 million valuation calculated at a 33% discount relative to Goldman Sachs.

28. Kruskall, as seller, had a duty to disclose to Plaintiff that Plaintiff's understanding of what he was receiving in consideration for the $1 million paid to Kruskall was not accurate, and that the convertible promissory notes, when converted, would significantly dilute the value of Plaintiff's investment, and that his investment was not based on a $100 million valuation calculated at a 33% discount relative to Goldman Sachs.

29. The foregoing omissions by Kruskall were material.

30. Kruskall intended that Plaintiff sign the Agreement as written and without knowledge of the existence of the convertible promissory notes, their impact on the value of Plaintiff's investment, and that his investment was not based on a $100 million valuation calculated at a 33% discount relative to Goldman Sachs.

31. Plaintiff's reliance on the facts as presented to him by Kruskall and Nadler, Kruskall's agent for purposes of this transaction, was reasonable.

32.     As a result of Plaintiff's reliance on the facts presented to him by Kruskall and Nadler, which deliberately concealed the existence of the convertible promissory notes, their impact on the value of Plaintiff's investment, and that Plaintiff's investment was not based on a $100 million valuation calculated at a 33% discount relative to Goldman Sachs, Plaintiff did not receive the full 2% of the then-outstanding shares of Kensho, calculated on a fully diluted basis.

33.     Kruskall's misrepresentations and omissions were the proximate cause of damages to Plaintiff, and Plaintiff seeks to recover the value of the shortfall in the shares sold, an amount in excess of $300,000, upon information and belief.

## COUNT II:  REFORMATION BASED ON UNILATERAL MISTAKE

34.     Plaintiff incorporates by reference all of the preceding Paragraphs as if fully stated herein.

35.     Plaintiff understood that, based on his investment of $2 million paid to Kruskall and Nadler ($1 million apiece), he would receive shares in Kensho equivalent to 2% of the shares then outstanding, with the company valued at $100 million, calculated on a fully diluted basis.  Plaintiff executed the Agreement based on this understanding of the value of what he was receiving in Kensho in exchange for his investment.

36.     Plaintiff's understanding of his investment was mistaken, in that, because of the outstanding convertible notes that had the effect of diluting the value of the shares he received, he did not receive shares in Kensho equivalent to 2% of the shares outstanding in Kensho, with the company valued at $100 million (at a 33% discount relative to Goldman Sachs), calculated on a fully diluted basis.

37.     Plaintiff's unilateral mistake had a material effect on the Agreement.

38.     Kruskall knew or had reason to know that Plaintiff's understanding with respect to the manner on which the number of shares he was purchasing, and how that number of shares had been calculated, was mistaken but remained silent notwithstanding.

39.     Based on Plaintiff's unilateral mistake and Kruskall's knowing silence, the Agreement should be reformed to reflect the terms of the actual agreement between Plaintiff and Kruskall, namely a purchase price for the shares Kruskall sold of $3.2601, and a transfer to Plaintiff from Kruskall of no less than an additional 86,739 shares of Kensho common stock.

WHEREFORE, Plaintiff prays for a judgment:

1.     Awarding Plaintiff compensatory damages incurred as a consequence of Kruskall's fraud as described herein;

2.     Reforming the Agreement to provide for a share purchase of price of $3.2601, and a transfer to Plaintiff from Kruskall of no less than an additional 86,739 shares of Kensho common stock; and

3.     Awarding Plaintiff such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims and defenses so triable.

Date:  August 3, 2017                                        LAW OFFICE OF ROBERT G. MANSON

      */s/Robert G. Manson*
Robert G. Manson (BBO#674457)
398 Brigham Street
Marlborough, MA 01752
(508) 274-8360
bobmanson@comcast.net

Of Counsel:

DORSEY & WHITNEY LLP
Bruce R. Ewing (*pro hac vice pending*)
Elizabeth Baksh (*pro hac vice pending*)
51 West 52nd Street
New York, New York 10019
Telephone:  (212) 415-9200
Facsimile:  (212) 953-7201
E-mail:  ewing.bruce@dorsey.com
        baksh.elizabeth@dorsey.com

***Attorneys for Plaintiff Andre Crawford-Brunt***