# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ANDRE CRAWFORD-BRUNT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 17-11432-FDS |
| | ) | |
| PETER KRUSKALL, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM AND ORDER ON DEFENDANT'S MOTIONS IN LIMINE TO EXCLUDE CERTAIN E-MAIL CHAINS AND CAPITALIZATION TABLES

**SAYLOR, C.J.**

This dispute involves a claim of fraud arising out of a sale of shares in Kensho Technologies, Inc., an analytics and machine learning company. Jurisdiction is based on diversity of citizenship.

Daniel Nadler and defendant Peter Kruskall founded Kensho in 2013. In mid-2014, plaintiff Andre Crawford-Brunt, who was then the global head of equity trading at Deutsche Bank, agreed to purchase 2% of Kensho's "fully diluted" shares for $2 million. Crawford-Brunt asked Nadler what the total number of "fully diluted" shares was, and Nadler replied by e-mail that there were approximately 21.5 million shares outstanding "as of now." Crawford-Brunt then acquired 220,000 shares apiece from Nadler and Kruskall.

Several months later, Crawford-Brunt learned that Kensho had previously issued to other investors convertible debt and other instruments that, if converted into stock, would have significantly diluted his stake in the company. He brought suit against Kruskall, alleging fraud

and seeking reformation of the purchase agreement based on unilateral mistake.

Kruskall has moved *in limine* to exclude certain exhibits expected to be offered at trial by Crawford-Brunt. The exhibits in question are e-mail chains (Pl. Exs. 12, 13, 20, and 31), and capitalization tables and share calculation spreadsheets (Pl. Exs. 15, 32, 39, 50, 58, and 73), some of which are attachments to the e-mails. According to Kruskall, and in simple terms, the exhibits are inadmissible hearsay and should be excluded.

1. **Exhibits 12 and 39**

Exhibit 12 is an internal Kensho e-mail chain dated August 14 and 15, 2014, concerning a proposal to convert certain instruments of Investor X into stock and then facilitate a buy-out of that stock by Investor Y. Nadler instructs Kim Murphy, the then-Chief Financial Officer of Kensho, to "circle back" with Investor X to "let them know roughly what the dollar amount of the shares they will be converting into will be so they can start thinking and planning internally about whether they want to do this." Murphy responds, "So this is the tone of what we would say to [Investor X]: On an as-converted basis, your notes would convert to 602,176 shares which, based on the information we have today, equates to approx 1.95% ownership on a fully-diluted basis. We don't talk values as we want the discussion of what the fully-diluted ownership is worth to happen between [Investor Y] and [Investor X]." Murphy also attaches a pro forma capitalization table (Exhibit 39) and asks, "Does everyone agree on the messaging? Should I run [it] by Peter [Kruskall]?" Nadler responds, "OK several nuances to add here. Kim, for me and not for them, at a 150M val[uation], how many millions would [Investor Y] get to put in by buying [Investor X] out?" Kruskall responds, in substance, that the mathematical calculation was simple (1.95% times 150).

Kruskall objects to the e-mail chain as inadmissible hearsay. (Def. Mem. at 3). Plaintiff contends that the e-mail is an adoptive admission under Fed. R. Evid. 801(d)(2)(B), on the theory that Kruskall would have been expected to respond and object if he disagreed with the proposal, and thus his failure to do so is an admission of an opposing party. (Pl. Mem. at 8-10). While it is true that a failure to respond can, in some circumstances, constitute an adoptive admission, this does not appear to be such an instance; among other things, it is unclear what factual assertion, if any, he would have been expected to respond to if it were untrue.

In any event, and more importantly, it does not appear that the document is being offered for the truth of any matter asserted in it. Indeed, it is unclear whether there are any factual assertions set out in the document, or if so, how they would be used.[1]

It appears that the real purpose for which plaintiff seeks to use the e-mails is to show that Kruskall (1) knew of the existence of certain convertible instruments and (possibly) (2) had an understanding of the meaning of "fully-diluted" at the time of the alleged false representation to plaintiff.[2] In other words, and put simply, the document is evidence of Kruskall's then-existing knowledge and belief. If Kruskall is called as a witness, and testifies consistently with the document, presumably the document is merely cumulative; if he testifies inconsistently, presumably it could be used for impeachment purposes. Accordingly, even if the document contains hearsay or is offered to prove an out-of-court assertion, it will not be excluded from

---

[1] At most, it arguably contains an assertion that in August 2014 Investor X owned an interest in Kensho that was convertible (presumably, debt that was convertible into stock). It is unclear whether that fact is even disputed, and if it is, it may be proved in other ways, such as through live testimony or other exhibits.

[2] That evidence is not necessarily straightforward; for example, plaintiff would have to argue that Kruskall's failure to correct or object to someone else's calculation of "fully-diluted" represents his understanding, as opposed to him performing that calculation himself or otherwise directly expressing his understanding of the term.

evidence altogether.  Furthermore, and if necessary, the Court can issue a limiting or cautionary instruction as to the purposes for which the document can and cannot be used.

The attached pro forma capitalization table (Exhibit 39) will presumably be offered, at least in part, for its truth:  to show the capitalization of the company and to show that there were, in fact, instruments that were convertible into stock of Kensho that would have diluted plaintiff's investment.  Exhibit 39 is clearly a business record and is almost certainly admissible under Fed. R. Evid. 803(6).  The fact that it reflects a hypothetical (what would happen if certain debt were converted) does not make it any less of a business record.  It is unclear whether plaintiff has a witness who can testify as to the formal requirements of Rule 803(6), but the text of the e-mails makes clear that it was created or approved by the then-Chief Financial Officer of the company, at the instruction of the Chief Executive Officer, in the ordinary course of business, from the records of the company.  It is at least possible that some combination of testimony from Murphy, Nadler, and/or WilmerHale could be sufficient to qualify Exhibit 39 as a business record.  Under the circumstances, Exhibit 39 will not be excluded as inadmissible hearsay.

2.      **Exhibit 13**

Exhibit 13 is a related e-mail chain to Exhibit 12 ending on August 19, 2014, essentially consisting of communications between Investor X and Kensho.  Investor X inquires, "[C]ould you please let us know, if [we] were to convert and liquidate [our] entire stake in Kensho at this financing, what dollar amount would we realize?"  The last e-mail is from Kensho's Kim Murphy to Nadler and Kruskall.  Murphy asks, "Should I send the last proposed messaging? You mentioned nuances, Dan?"  Again, the proposed "messaging" is, "On an as-converted basis, your notes would convert to 602,176 shares which, based on the information we have today,

equates to approx 1.95% ownership on a fully-diluted basis." There is no reply from either Nadler or Kruskall.

Defendant again seeks to exclude the e-mail chain as hearsay, and plaintiff again contends that it is an adoptive admission under Fed. R. Evid. 801(d)(2)(B). (Def. Mem. at 3; Pl. Mem. at 8-10). Exhibit 13 appears to be essentially identical from an analytical standpoint to Exhibit 12 and will be treated in a similar manner.

### 3. **Exhibits 20 and 73**

Exhibit 20 is an e-mail chain. The initial e-mail is from plaintiff dated March 5, 2015, and was sent to Michael Bain at WilmerHale (counsel for Kensho) and John Kaufmann at Dorsey & Whitney (presumably, counsel for plaintiff), copied to Nadler. Plaintiff inquires, "Where are we in the process of calculating the fully diluted numbers of shares please? I am very keen to put this to bed."

The other e-mail on the chain is a response from attorney Bain, who attaches a "reconciliation and calculation of the share price" spreadsheet consisting of three parts. Kruskall is not copied on either e-mail.

Exhibit 73 is a table entitled "Share Price Calculator." It was apparently one of the documents attached to the e-mail chain. It shows, among other things, the amount of stock held by various individuals, as well as "restricted stock held by employees," "options + unallocated option pool," and "conversion shares assuming conversion of all notes on September 18, 2014."

Exhibit 20, the e-mail chain, does not appear to be admissible against Kruskall. He is not copied on the e-mails, and therefore did not even participate in the discussion; it does not, therefore, constitute an admission or an adoptive admission, and does not show his knowledge or

intent. Its only relevance, if any, is in providing context to the creation of Exhibit 73, if in fact Exhibit 73 is admissible.[3]

Exhibit 73, on its face, appears to be a business record and is likely admissible under Fed. R. Evid. 803(6). According to plaintiff, Exhibit 73 was either created by Murphy, the former CFO, or Bain, the company's outside counsel. (Pl. Mem. at 12-13). Nadler also testified in his deposition that WilmerHale was responsible for maintaining Kensho's capitalization table. (*Id.* at 13). It is at least possible that some combination of testimony from Murphy, Nadler, and/or Bain could be sufficient to qualify Exhibit 73 as a business record. Exhibit 73 will therefore not be excluded at this juncture. The Court will defer a final ruling on Exhibit 20 until the issue of the admissibility of Exhibit 73 is resolved.

### 4. Exhibit 31

Exhibit 31 is an e-mail dated July 8, 2014, from Kruskall to a third party, who is apparently a friend. The subject line says, "Cap table attached," and the text says, "Finally got a copy from our CFO. Thanks again for your advice!" The e-mail includes a capitalization table of Kensho, which is part of the exhibit.

The e-mail itself is Kruskall's own statement, which at a minimum is admissible under Fed. R. Evid. 801(d)(2)(A). The capitalization table, which is surely a business record under Fed. R. Evid. 803(6), is in any event an adoptive admission under Fed. R. Evid. 801(d)(2)(B). Kruskall was the treasurer of Kensho, and he was forwarding (without qualification) a capitalization table that he had received from the CFO of Kensho. The document is therefore admissible.

---

[3] Defendant does not seek to exclude the document as evidence of settlement discussions under Fed. R. Evid. 408.

### 5. **Exhibits 15, 32, 50, and 58**

Exhibits 15, 32, 50, and 58 are pro forma capitalization tables for Kensho. On their face, and like Exhibit 39, the documents appear to be classic business records; the fact that they may include a mix of existing information (such as current stock ownership) and projections (such as stock ownership if certain debt instruments are converted, or if options or warrants are exercised) does not make them any less so. Exhibits 50 and 58 have been qualified in substance as business records by an affidavit from Kensho's Chief Deputy Financial Officer. (Pl. Mem. at 10-11). Exhibit 15 is essentially a duplicate of Exhibit 58, with a different date and a "grand total" row at the bottom. Exhibit 32 is essentially a duplicate of Exhibit 50. Accordingly, as to those exhibits, the motion to exclude will be denied.

### 6. **Conclusion**

Accordingly, and for the foregoing reasons, Defendant's Motions *in Limine* to Exclude Exhibit 12 (Docket No. 113), Exhibit 13 (Docket No. 114), Exhibit 15 (Docket No. 115), Exhibit 20 (Docket No. 116), Exhibit 31 (Docket No. 118), Exhibit 32 (Docket No. 119), Exhibit 39 (Docket No. 124), Exhibit 50 (Docket No. 125), Exhibit 58 (Docket No. 126), and Exhibit 73 (Docket No. 130) are DENIED.

**So Ordered.**

Dated: September 28, 2020

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court