UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ANDRE CRAWFORD-BRUNT, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 17-11432-FDS |
| PETER KRUSKALL, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTIONS IN LIMINE TO
EXCLUDE CERTAIN DOCUMENTS RELATING TO DAMAGES**

**SAYLOR, C.J.**

This dispute involves a claim of fraud arising out of a sale of shares in Kensho Technologies, Inc., an analytics and machine learning company. Jurisdiction is based on diversity of citizenship.

Daniel Nadler and defendant Peter Kruskall founded Kensho in 2013. In mid-2014, plaintiff Andre Crawford-Brunt, who was then the global head of equity trading at Deutsche Bank, agreed to purchase 2% of Kensho's "fully diluted" shares for $2 million. Crawford-Brunt asked Nadler what the total number of "fully diluted" shares was, and Nadler replied by e-mail that there were approximately 21.5 million shares outstanding "as of now." Crawford-Brunt then acquired 220,000 shares apiece from Nadler and Kruskall.

Several months later, Crawford-Brunt learned that Kensho had previously issued to other investors convertible debt and other instruments that, if converted into stock, would have significantly diluted his stake in the company. He brought suit against Kruskall, alleging fraud

and seeking reformation of the purchase agreement based on unilateral mistake.

Defendant has filed three separate motions seeking to exclude certain documents concerning the calculation of plaintiff's damages. While this is nominally a dispute about whether several of plaintiff's exhibits are relevant, the underlying dispute concerns the appropriate measure of damages.

### 1.     The Appropriate Measure of Damages

On September 18, 2014, plaintiff bought 440,000 shares of Kensho—220,000 each from defendant and Daniel Nadler—for $2 million. (Am. Compl. ¶ 19). Plaintiff alleges that while he believed he was purchasing 2% of Kensho's outstanding shares as calculated on a fully diluted basis, defendant concealed the existence of various financial instruments that could further dilute plaintiff's stake below 2%. (*Id.* ¶ 20). Plaintiff contends that had he known about those dilutive instruments, he would have bargained for an additional 460,828 shares each from Nadler and defendant. (*Id.* ¶ 23). Plaintiff also alleges that defendant represented that plaintiff's investment was based on a $100 million valuation calculated at a 33% discount to the valuation of Goldman Sachs's investment, which he contends is not true. (*Id.* ¶¶ 15, 20).

Plaintiff thus contends that he is entitled to damages in the amount of the value of those additional shares, or in the alternative, to equitable relief in the form of defendant transferring those shares to him. (Am. Compl. ¶ 23).[1] Assuming that plaintiff can prove liability, the parties disagree as to how to determine the damages remedy. Both contend that a victim of intentional misrepresentation is entitled to the "benefit of the bargain" measure of damages—that is, the difference between the value of what he has received and the actual value of what he would have

---

[1] Of course, plaintiff would not receive those shares for free; presumably, any such remedy would have to reflect both a hypothetical 2014 purchase price (because plaintiff would have had to buy the shares) and an interest-rate calculation (because defendant would have received the purchase funds in 2014).

received if the representations had been true. (Def. Mem. at 10; Pl. Mem. at 21). They disagree, however, as to the amount of damages that calculation produces. Defendant contends that the "actual value" of what plaintiff would have received is the Kensho share price at the time of the 2014 transaction. (Def. Mem. at 10). Plaintiff, however, contends that he is entitled to recover the market value of the shares at the time the misrepresentation was discovered in 2018, which is the consideration he received for the shares when S&P acquired Kensho in that year. (Pl. Mem. at 22, 25).

      The "benefit of the bargain" measure is usually applied in cases of fraudulent misrepresentation in Massachusetts. *See Rice v. Price*, 340 Mass. 502, 507 (1960) (stating that the usual rule is that "the plaintiff is entitled to recover the difference between the value of what he has received and the actual value of what he would have received if the representations had been true."). However, there are exceptions. *See id.* at 509 (finding that a court can modify the rule to prevent injustice). Notably, the Supreme Judicial Court has found that the ordinary measure of damages was inapplicable in a case in which the misrepresentation amounted to the victim losing an opportunity to make a profit on securities it did not own, and found instead that reliance damages were the appropriate measure. *See Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co.*, 445 Mass. 411, 425-26 (2005). In addition, the Restatement suggests that a special damages rule may exist in the case of commodities with fluctuating value customarily traded on an exchange: a plaintiff can recover the highest replacement value of the commodity within a reasonable period during which he might have replaced it. *See* Restatement (Second) of Torts § 927(1)(b). That remedy ensures that defendants cannot realize "the speculative possibilities of a rise in market value without any compensation to the plaintiff who is deprived of them." *Id.* cmt. e.

In any event, neither party has addressed the issue of damages in any depth, and the exhibits will be excluded for reasons unrelated to the appropriate damages methodology. The Court will therefore not reach the question of the appropriate measure of damages.

### 2. Exhibit 69

Exhibit 69 is a copy of plaintiff's disclosures under Fed. R. Civ. P. 26. It is not clear how plaintiff's counsel expects to use it at trial. In any event, it is a document created by plaintiff or his counsel for purposes of this litigation, and at a minimum constitutes inadmissible hearsay. *See* Fed. R. Evid. 801. The exhibit will therefore be excluded.

### 3. Exhibit 70

Exhibit 70 appears to be a transaction summary from plaintiff's brokerage account that documents his 2018 acquisition of S&P shares and is referred to in the report of his expert witness. If the appropriate measure of damages relies on the 2018 S&P share price and this exhibit is offered to prove that amount, the document may be admissible as a business record under Fed. R. Evid. 803(6). If it does not, the exhibit is irrelevant, and may be excluded under Fed. R. Evid. 401 and 402. The Court will therefore defer making a final ruling on the admissibility of the document until the issue of the proper measure of damages has been resolved.

### 4. Exhibit 76

Exhibit 76 is a copy of Tiago Duarte-Silva's report. While Duarte-Silva may be permitted to testify as a rebuttal expert for plaintiff, his expert report is not admissible, at least not when offered by plaintiff to prove the truth of the information contained in it. Fed. R. Evid. 801; *see also Ake v. General Motors Corp.*, 942 F. Supp. 869, 877-78 (W.D.N.Y. 1996) (finding

that although an expert may testify at trial, his report itself is inadmissible).  The exhibit will therefore be excluded.

Accordingly, and for the foregoing reasons, Defendant's Motions *in Limine* to Exclude Exhibit 69 (Docket No. 128) and Exhibit 76 (Docket No. 131) are GRANTED.  Defendant's Motion *in Limine* to Exclude Exhibit 70 (Docket No. 129) is DENIED without prejudice.

**So Ordered.**

|  |  |
|---|---|
| Dated:  September 28, 2020 | /s/ F. Dennis Saylor IV_____<br>F. Dennis Saylor IV<br>Chief Judge, United States District Court |